**FIRST DIVISION**
**BARNES, P. J.,**
**PIPKIN and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 20, 2023**

# In the Court of Appeals of Georgia

A23A0628. SMARTT v. ELDRIDGE.

LAND, Judge.

J.P. Smartt, Jr., appeals from the grant of partial summary judgment to his sister, Temple Smartt Eldridge, in this property dispute. J.P. argues that the trial court erred in granting Temple's motion for partial summary judgment, in not granting his cross-motion for summary judgment, in not addressing his motion to strike the contents of two affidavits filed by Temple, and in dismissing his motion to dismiss as moot. We disagree and affirm.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence

and all inferences drawn from it in a light favorable to the nonmovant." (Citations and punctuation omitted.) *Stolte v. Hammack*, 311 Ga. App. 710, 710 (716 SE2d 796) (2011).

So viewed, the record shows that in 1976, J.P. and Temple's mother acquired title to a large tract of land in Walker County. In 1982, she divided her property among her three children, J.P., Temple, and David K. Smartt, by executing three separate warranty deeds. Temple's deed contained a grant of a 50-foot perpetual easement running from a public road to her property. This easement ran across the south property line of the land conveyed to David in his deed. J.P.'s deed did not contain any easement or right of way through either of his sibling's properties because his property had access at the time from an existing driveway that connected his property to a public road. Each of the deeds also contained a clause that required each sibling, in the event of a proposed sale of their property, to extend a right of purchase to the other two siblings for the same price and terms as any bona fide offer from a third party.

In 1983, the Georgia Department of Transportation ("GDOT") filed a condemnation action against all three siblings and a utility company in order to widen a state highway. As part of the condemnation action, GDOT created a right-of-way

2

map designating the properties owned by the siblings as Parcel 19A, Parcel, 19B, and Parcel 19, owned by J.P., David, and Temple, respectively. The condemnation created a fifty-foot by fifty-foot strip of land jutting out from the standard road right of way (the "Surplus Property"). It is undisputed that David, the owner of GDOT Parcel 19B, was the fee simple owner of the Surplus Property at the time of its acquisition by GDOT. The condemnation action also removed J.P.'s access to the road through his own property, so GDOT constructed a new driveway that provided him with access to the relocated state highway. This new driveway crosses through Parcel 19B and the Surplus Property.

In 2001, David died, and his wife, Martha Smartt, succeeded to his interest in real property by virtue of a deed of survivorship. In 2006, Temple purchased all of the property formerly owned by David from Martha, and J.P. waived his right of first refusal to purchase the property. In 2013, Temple expressed interest in purchasing the Surplus Property from GDOT, and GDOT executed a quitclaim deed to Temple "subject to any easement of record." After the sale, Temple executed an easement to J.P. and his daughter, granting them a perpetual, non-exclusive easement for ingress and egress over and across the Surplus Property to State Route 193.

In 2017, J.P., through an attorney, wrote a letter to GDOT complaining that Temple was allowed to purchase the Surplus Property without GDOT having first given notice to him, stating that J.P. had a "legal interest" in "preserving unfettered and unobstructed" access to his property through the driveway crossing the Surplus Property. Shortly thereafter, in October 2017, a GDOT attorney, Mary Jo Volkert, contacted Temple about J.P.'s letter, alleging that Temple had misrepresented J.P.'s interest in purchasing the Surplus Property and demanding that Temple either convey an easement to J.P. or quitclaim her interest in the Suprlus Property back to GDOT.

In May 2020, J.P. filed suit against Temple and GDOT to set aside the quitclaim deed for the Surplus Property, arguing that GDOT failed to give notice to J.P. when it sold the Surplus Property to Temple in violation of OCGA § 32-7-4. In August 2020, Temple filed a motion for partial summary judgment and in September 2020, J.P. filed a cross-motion for summary judgment. In support of his motion for summary judgment and in opposition to Temple's motion for summary judgment, J.P. filed an affidavit from a land surveyor stating that J.P. "owned abutting property" to the Surplus Property. In January 2021, J.P. voluntarily dismissed GDOT as a party. In October 2021, while the motions for summary judgment were still pending, Temple filed a motion to dismiss, arguing that the relief requested by J.P. could not be granted

4

in the absence of GDOT as a party. On March 17, 2022, J.P. filed two motions to strike the contents of two affidavits filed by Temple, including an affidavit executed by Volkert stating that at the time she wrote the letter to Temple, she "had not researched the chain of title to the [Surplus] Propert," that she later learned that Temple "had already granted an access easement to [J.P.] across the entire [Surplus] Property" and that her October 2017 letter to Temple "was in error."

On March 22, 2022, the trial court held a hearing on the pending motions, and the parties agreed that Temple's motion for partial summary judgment and motion to dismiss would be heard first. After the hearing, the trial court entered an order granting Temple's motion for summary judgment and denying as moot her motion to dismiss. The order did not rule on J.P.'s motions to strike.

1. As a preliminary matter, J.P. has waived his argument that the trial court erred when it considered portions of the affidavits that were the subject of his motions to strike. "It is the duty of a litigant to obtain a ruling on his motions or objections." (Punctuation and footnote omitted.) *Shropshire v. Alostar Bank of Commerce*, 314 Ga. App. 310, 313 (2) (a) (724 SE2d 33) (2012). At the May 2022 hearing, the trial court stated that it had "received a motion to strike" but "[t]here is no indication in the appellate record that [J.P.] made any effort to elicit a ruling from the trial court

5

with regard to [his] motion [to strike]" prior to filing his appeal. *City of Sandy Springs v. Mills*, 331 Ga. App. 709, 714 (2) (771 SE2d 405) (2015).

2. J.P. argues that the trial court erred in granting summary judgment to Temple because J.P. was an "owner/grantor" of the Surplus Property at the time of conveyance to GDOT as well as the owner of abutting land to the Surplus Property, and thus he was entitled to notice of the sale of the Surplus Property to Temple under OCGA § 32-7-4 (a) (1). We are unpersuaded.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). Additionally, we are required "to avoid a construction that makes some language mere surplusage." *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 190 (587 SE2d 24) (2003).

6

In relevant part, OCGA § 32-7-4 (a) (1) provides that where a department, county, or municipality (here, GDOT) has held title to a property for less than 30 years and seeks to sell that property, the department

> *shall notify the owner of such property at the time of its acquisition* or, if the tract from which the department . . . acquired its property has been subsequently sold, *shall notify the owner of abutting land holding title through the owner from whom the department . . . acquired its property* . . . . The notice shall be in writing delivered to the appropriate owner, or association or by publication if the owner's or association's address is unknown; and the owner or the association, as applicable, shall have the right to acquire, as provided in this subsection, the property with respect to which the notice is given.

(Emphasis supplied.) Thus, the plain language of OCGA § 32-7-4 (a) (1), requires notice of the sale only to the party who owned of the Surplus Property at the time of its acquisition by GDOT. If the tract from which GDOT acquired the Surplus Property has subsequently been sold, however, the statute requires notice to the owner of abutting land *where the owner holds title to that land through the owner from whom GDOT acquired the Surplus Property*. To conclude that notice must be given to all owners of abutting land regardless of how they acquired title would render the rest of this sentence mere surplusage.

7

The record is clear that the Surplus Property was a part of Parcel 19B at the time of its conveyance to GDOT, that Parcel 19B was owned by David at the time the Surplus Property was conveyed to GDOT, and that Parcel 19B was subsequently sold to Temple after the Surplus Property was conveyed to GDOT. J.P.'s own complaint states that David was the fee simple owner of the Surplus Property. Thus, J.P. was not the owner of the Surplus Property at the time it was acquired by GDOT and did not require notice under the first prong of OCGA § 32-7-4 (a) (1). In any event, because Parcel 19B was sold subsequent to GDOT's acquisition of the Surplus Property, the second prong of OCGA § 32-7-4 (a) (1) applies, which only requires notice of the sale to be made to owners of abutting land *who obtained title to the land abutting the Surplus Property through the owner from whom GDOT acquired the Surplus Property*. Because J.P. acquired title to his property, Parcel 19A, from his mother, GDOT did not violate OCGA § 32-7-4 (a) (1) when it sold the Surplus Property to Temple without providing notice to J.P. Therefore the trial court did not err in granting partial summary judgment to Temple.

3. J.P. argues that the trial court erred in dismissing Temple's motion to dismiss for failure to join GDOT as an indispensable party as moot. Because the trial court did not err in granting summary judgment to Temple, this enumeration of error is

moot. See *Brazeal v. Newpoint Media Grp., LLC*, 331 Ga. App. 49, 49 n.1 (769 SE2d 763) (2015) (appellant's enumeration of error regarding trial court's ruling on motion to dismiss was moot "because the trial court granted [appellee's] cross-motion for summary judgment on the same claims at issue in the motion to dismiss").

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*